# General Accident Insurance Co. v. Ciafra

TERESHKO, *J.,* April 9, 1998—Before the court are the appeals taken in the above-captioned matter by defendants, Menniti and Ciafra, from the following order of this court dated February 10, 1998, which granted summary judgment in favor of plaintiff, General Accident Insurance Company:

"And now, February 10, 1998, upon consideration of the motion for summary judgment of the plaintiff, General Accident Insurance Co., and any response thereto, it is hereby ordered and decreed that the motion for summary judgment of the plaintiff, General Accident Insurance Co., seeking declaratory relief is granted. It is further ordered and decreed that General Accident Insurance Co. owes no duty to defend or indemnify William Ciafra in connection with a cause of action styled Antonio and Vincenzia Menniti, h/w, and Antonio Menniti, individually and as administrator of the estate of Dominic Menniti, deceased v. William Ciafra in the Court of Common Pleas of Philadelphia County, June term, 1995, no. 2117.

"It is further ordered and decreed that General Accident Insurance Co. owes no duty to pay any indemnity or policy proceeds on behalf of William Ciafra to the defendants, Antonio and Vincenzia Menniti, as beneficiaries, parents, and/or administrators of the estate of Dominic Menniti, deceased, based on the fact that the underlying cause of action does not fall within, and is excluded from, the coverage afforded by the homeowner's insurance policy issued by General Accident Insurance Co., to the defendant, William Ciafra."

Briefly, the underlying facts and procedural history are as follows:

On July 17, 1993, decedent, Dominic Menniti, and defendant, William Ciafra, were involved in a violent altercation at Moyamensing Avenue and Camac Streets

in Philadelphia, Pennsylvania, which resulted in the shooting death of Dominic Menniti by William Ciafra. Defendant was arrested for shooting the decedent and causing his death. He was tried before the Honorable Paul Ribner and following a non-jury trial, was found guilty of third-degree murder on September 12, 1994. Antonio and Vincenzia Menniti, husband and wife, and surviving parents of Dominic Menniti, instituted a civil lawsuit against William Ciafra for the wrongful death of their son. The civil action which was filed on June 20, 1995, captioned: *Antonio and Vincenzia Menniti, h/w and Antonio Menniti as Administrator of Dominic Menniti, Deceased v. William Ciafra, Philadelphia County,* C.C.P., June term, 1995, no. 2117, alleged that the death of decedent was caused solely due to the negligence, carelessness, recklessness and/or intentional act of defendant, William Ciafra.

Antonio and Vincenzia Menniti filed a motion for summary judgment upon which the Honorable Mark I. Bernstein granted, holding that defendant, William Ciafra, was found liable for the shooting and causing the death of Dominic Menniti. On March 12, 1997, General Accident Insurance Co. filed a declaratory judgment action seeking a determination as to their rights, duties and/or obligations in connection with the litigation. On January 2, 1998, General Accident Insurance Co. filed a motion for summary judgment. The gravamen of that motion was that Antonio and Vincenzia Menniti's claim for damages was precluded as a matter of law because Mr. William Ciafra's (father of defendant, William Ciafra) homeowners insurance policy excluded coverage for the death of Dominic Menniti on July 17, 1993. General Accident contends that under the homeowners policy, No. HP0000879, the shooting death of Dominic Menniti does not constitute an "occurrence" as such shooting was neither accidental nor negligent

for the purpose of implicating any coverage under that policy. General Accident cited the portion of the homeowners policy which excluded personal liability to others for bodily injury or property damage which is "expected" or "intended" by the insured. For the reasons set forth below, this court agreed with that position and granted declaratory relief in finding that General Accident Insurance Co. has no duty to defend the insured, Mr. William Ciafra, in the instant civil litigation.

Appellants raise several issues as to whether the trial court erred in granting General Accident Insurance Company's motion for partial summary judgment and granting declaratory relief. The record shows that there are no genuine disputes as to any material facts, and therefore, this court must interpret the terms of the insurance policy and determine the issue of coverage as a matter of law.

The principles governing a motion for summary judgment are well settled. Summary judgment should be granted: "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b); *Stidham v. Millvale Sportsmen's Club,* 421 Pa. Super. 548, 618 A.2d 945 (1992). The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466 (1979); *Weiss v. Keystone Mack Sales Inc.,* 310 Pa. Super. 425, 456 A.2d 1009 (1983). Summary judgment may not be had where the moving party relies exclusively upon oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genu-

ine issue of material fact. *Garcia v. Savage,* 402 Pa. Super. 324, 586 A.2d 1375 (1991). In determining whether the moving party has met this burden, the court must examine the record in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Thompson, supra.* All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Breslin by Breslin v. Ridarelli,* 308 Pa. Super. 179, 454 A.2d 80 (1982). Summary judgment should be granted only in the clearest case, where the right is clear and free from doubt. *Weiss v. Keystone Mack Sales Inc., supra.* Applying these principles to the present case, this court found no genuine issue of material fact as to General Accident having neither a duty to defend nor a duty to indemnify William Ciafra in the underlying litigation.

However, defendants contend that this court erred in granting plaintiff's motion for summary judgment. The Mennitis claim that General Accident Insurance Co. forwarded two (2) separate insurance policies, one being an HO-2-ED.4-84 policy, and the second being an HO-00-03-04-91-H. Appellants argue that plaintiff's motion for summary judgment should have been denied as there exists a genuine issue of material fact as to what homeowners policy existed as of July 17, 1993, the date of Dominic Menniti's death. This issue raised by defendant is without merit. In evaluating the contention of the appellants/defendants, the policy applicable to William J. Ciafra and the correct policy for the purpose of the motion for summary judgment is HO-2-ED.Broad Form Ed.4-84, No. HP-0000879. This policy was received by counsel for the appellants which was attached to their answer to General Accident's motion for summary judgment, marked as exhibit "A." In addition, regardless of the fact that two (2) different policies had inadvertently been referred to by plaintiff, a review of the policies by the court revealed that both have similar exclusionary language for bodily injury

and property damage, "expected or intended" by the insured and define an "occurrence" as an "accident."

Appellants contend that this policy language contained in General Accident's homeowners insurance policy issued to defendant, William J. Ciafra, is ambiguous and should be construed against the insurer, and that the shooting by the defendant of Dominic Menniti on July 17, 1993, does not fit into the exclusion of intentional conduct as claimed by General Accident Insurance Company.

To the contrary, this court found no ambiguity within the coverage of the policy. General Accident owed no duty to defend or indemnify as the conduct of William Ciafra constituted bodily injury "expected" or "intended" from the standpoint of the insured and further fails to constitute an "occurrence" under Pennsylvania law thereby precluding coverage under the homeowners insurance policy issued to William J. Ciafra by the plaintiff, General Accident Insurance Company. This court offers the following analysis in support of its finding and the granting of declaratory relief and motion for summary judgment in favor of plaintiff.

The issue in this case involves the proper construction of an insurance policy which may be resolved as a matter of law in a declaratory judgment action by the court. 42 Pa.C.S. §7533; *Germantown Insurance Co. v. Martin,* 407 Pa. Super. 326, 595 A.2d 1172 (1991). A declaratory judgment action is particularly appropriate in construing contracts of insurance obligated to defend and/or indemnify one claiming under the policy. *Liberty Mutual Insurance Co. v. S.G.S. Company,* 456 Pa. 94, 318 A.2d 906 (1974). Whether a particular loss falls within the coverage of an insurance policy is a question of law to be decided by the court on a motion for summary judgment in a declaratory judgment action.

*Erie Insurance Exchange v. Transamerica Insurance Company,* 516 Pa. 574, 533 A.2d 1363 (1987).

Appellants claim that General Accident Insurance Co. has a duty to defend against those portions of the complaint which might be covered by Mr. William Ciafra's homeowners insurance policy.

In Pennsylvania, an insurer has a duty to defend whenever the allegations in a complaint against the insured, taken as true, set forth a claim which potentially falls within the coverage of the policy. *Gedeon v. State Farm Mutual Automobile Insurance Co.,* 410 Pa. 55, 188 A.2d 320 (1963). "After discerning the facts alleged in the complaint, the court must decide whether, if those facts were found to be true, the policy would provide coverage. If it would, then there is a duty to defend." *D'Auria v. Zurich Insurance Co.,* 352 Pa. Super. 231, 507 A.2d 857 (1986). Not all claims asserted against an insured, however, activate the insurer's duty to defend. *Id.* In order to determine whether General Accident had a duty to defend Mr. Ciafra, this court must compare the terms of the homeowners policy with the nature of the allegations of the underlying complaint. Then it must be determined whether, if the allegations were true, General Accident might be obligated to provide coverage. *Britamco Underwriters Inc. v. Weiner,* 431 Pa. Super. 276, 636 A.2d 649 (1994).

The applicable portion of Mr. William J. Ciafra's homeowners policy states:

*"Coverage E—Personal liability*

"If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, we will:

"(1) Pay up to our limit of liability for the damages for which

"(2) Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the 'occurrence' equals our limit of liability."

In section II, coverage E, of Homeowners 2 broad form HO-2-ED 4-84, the policy defines "bodily injury" as:

"Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

The policy further defines an "occurrence" as follows:

"Occurrence" means an accident, including exposure to conditions, which results during the policy period in: (a) "bodily injury"; or (b) "property damage."

In this case, we are concerned mainly with the excluded coverage portions of the policy, more specifically the stock phrase concerning damage which is "expected or intended by the insured." The policy contains the following provision:

Coverage E—Personal liability and Coverage F—Medical payments to others do not apply to "bodily injury" or "property damage": (a) which is expected or intended by the "insured."

The complaint filed against the insured in this case alleges that the shooting death of Dominic Menniti was caused solely due to the negligence, carelessness, recklessness and/or intentional act of defendant, William Ciafra (Complaint—civil action—wrongful death and survival action—paragraphs 5, 6, 7.) Appellants further

allege in their complaint that defendant acted in a deliberate, willful, calculated and wanton manner in connection with the incident, and that punitive damages should be imposed on defendant. (Count III—punitive damages—paragraph 21.)

This court found that General Accident owed no duty to defend against the punitive damage allegations set forth in appellants' complaint. Punitive damage allegations are excluded from coverage as a matter of law. An insurer owes no duty to indemnify an insured on an award of punitive damages. *Creed v. Allstate Insurance Co.*, 365 Pa. Super. 136, 529 A.2d 10 (1987). Public policy does not permit a tort-feasor who is personally guilty of wanton misconduct to shift the burden of punitive damages to his insurer. *Edmond v. Liscio*, 209 Pa. Super. 200, 224 A.2d 793 (1966). Because General Accident owes a duty to defend against only those allegations that it would have to cover under the policy, and punitive damages are not recoverable under the policy as a matter of law. General Accident has no duty to defend against punitive damage allegations. *Aetna Casualty and Surety Company v. Roe*, 437 Pa. Super. 414, 650 A.2d 94 (1994).

However, this did not automatically relieve General Accident of any obligation to provide a defense against the portion of the complaint requesting damages. The issue presented to the court was whether William Ciafra's shooting death of Dominic Menniti constituted an intentional act discharging General Accident's duty to defend because the policy that insured Ciafra specifically excluded coverage for any person who "intentionally causes bodily injury or property damage."

This court found General Accident's duty to defend discharged for two reasons. First, William Ciafra's conviction of third-degree murder and deposition testimony

in connection with the underlying civil case, place this action within the "expected or intended exclusion" of General Accident's homeowners insurance policy. Second, it is contrary to the public policy of Pennsylvania to allow insurance coverage for an intentional tort or criminal acts.

Pennsylvania courts have examined the history of insurance coverage issues relating to a carrier's duty to defend in connection with cases including criminal conduct of an insured and the applications of the term "occurrence" and/or exclusions for bodily injury, "expected or intended by the insured" to that criminal conduct.

The Pennsylvania Superior Court has held that exclusionary clauses whereby personal liability and coverage do not apply to "bodily injury or property damage" which is "expected or intended by the insured," similar to that in General Accident's homeowners policy, exclude injury and damage of the same general type which the insured intended to cause. *United Services Auto Association v. Elitzky,* 358 Pa. Super. 362, 517 A.2d 982 (1986). An insured intends an injury if he desired to cause the consequences of his act or if he acted knowingly that such consequences were substantially certain to result. *Id.* In Pennsylvania, then, it is not sufficient that the insured intended his actions; rather, for the resulting injury to be excluded from coverage, the insured must have specifically intended to cause harm. *Wiley v. State Farm Fire and Casualty Co.,* 995 F.2d 457 (3d Cir. 1993). Applying this standard to the facts of the instant case in light of defendant's criminal conviction for third-degree murder and deposition testimony, this court found William Ciafra's shooting of the decedent excluded under the terms of the homeowners policy with General Accident, as it is exactly

the type of conduct which insurance companies are not and should not be expected to insure.

This court considered defendant's guilty plea to third degree as a factor in settling the issue of intent. Mr. Ciafra's guilty plea to third-degree murder constitutes an admission to the malice required to support such a conviction which establishes the necessary awareness or knowledge to bring defendant's conduct within General Accident's policy exclusion. A guilty plea is an acknowledgment by a defendant that he participated in the commission of certain acts with a criminal intent. It is well established that the defendant who pleads guilty is there to voluntarily acknowledge the facts presented by the Commonwealth and will accept his responsibility for them and will also accept the legal meaning and legal consequence of what he has done. *Commonwealth v. Anthony,* 504 Pa. 551, 475 A.2d 1303 (1984). Legal malice exists where there is particular ill will or where there is wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. *Commonwealth v. Austin,* 394 Pa. Super. 146, 575 A.2d 141 (1990). In addition, malice may be inferred from the use of a deadly weapon upon a vital part of the body. *Commonwealth v. Pigg,* 391 Pa. Super. 418, 571 A.2d 438 (1990). The underlying complaint filed by appellants alleges that defendant acted in an intentional, deliberate, willful, calculated and wanton manner in the shooting death of Dominic Menniti. William Ciafra aimed and fired a deadly weapon at the decedent fully aware of the consequences of his actions. Furthermore, the Honorable Paul Ribner found William Ciafra guilty of the crime of third-degree murder which established

the legal malice involving the specific intent to cause bodily harm. *Commonwealth v. Pitts,* 486 Pa. 212, 404 A.2d 1305 (1979).

However, this court was fully aware that William Ciafra's guilty plea, by itself alone, was not conclusive evidence of his intent. In further support of this court's finding of defendant's intent, this court reviewed the testimony of William Ciafra at the deposition in the subsequent civil suit held on August 19, 1996. In particular, the following testimony was provided by the defendant:

"Q. Was it your specific intention to kill Mr. Menniti at the time this incident happened?

"Mr. Ullom: I'm going to ask you to put that in some time frame.

"Q. At the time the shooting occurred.

"A. I meant to hurt him. I meant to get him off me, that was it." (Deposition: 8/19/96: p. 22)

"Q. Did you intend to shoot Mr. Menniti in his chest, is that what you were aiming for?

"A. Yes.

"Q. Why were you aiming for his chest?

"A. That's what was on top of me at the time when he was going to drag me out of the car." (Deposition: 8/19/96: pp. 23-26)

"Q. Were you aiming at him when you shot?

"A. Yes.

"Q. You don't know whether you hit him or not?

"A. No.

"Q. Did you know you had shot the gun when it went off?

"A. Yes." (Deposition: 8/19/96: p. 35)

It is evident from the testimony of the defendant that he intended to cause the bodily injury to Dominic Menniti when he aimed the gun at his chest and discharged it. Therefore, this court found William Ciafra's intent to be conclusively established by appellant's underlying complaint and deposition testimony independent of any unilateral guilty plea by the defendant.

The intentional conduct by William Ciafra must now be analyzed in conjunction with the exclusionary provision of General Accident's homeowners policy and the allegations in appellant's complaint. The Pennsylvania courts have examined the issue of whether an intentional act as in this instant case constitutes an accident and therefore an occurrence requiring the insurance carrier to defend and/or indemnify the insured.

In determining the existence of an "occurrence" the focus of the injury is on whether the underlying injury was caused by an accident. Such a determination is made by examining the nature of the act which inflicted bodily harm. *Nationwide Mutual Fire Insurance Company v. Pipher,* 1997 U.S. District Court Lexis 3284 (March 13, 1997). Under Pennsylvania law, the intentional torts of assault and battery are not ordinarily considered "accidents," and thus are excluded from coverage and the insurer has no duty to defend. *Wilson v. Maryland Casualty Co.,* 377 Pa. 588, 105 A.2d 304 (1954); *Gene's Restaurant, Inc. v. Nationwide Insurance Co.,* 519 Pa. 306, 548 A.2d 246 (1988); *Britamco Underwriters v. Grzeskiewicz,* 433 Pa. Super. 55, 639 A.2d 1208 (1994). In this instant case, William Ciafra pleaded guilty to third-degree murder, which is a felony of the first degree. 18 Pa.C.S. §2502(c). As previously discussed, murder in the third degree is defined as a killing done with legal malice, which involves the specific intent to cause bodily harm. *Commonwealth v. Pitts,*

*supra.* William Ciafra's guilty plea and deposition testimony have established the intent at issue. Therefore, in consideration of the applicable Pennsylvania case law, if a claim in the underlying complaint of a willful and malicious assault cannot be an accident, it logically follows that a claim in the underlying appellant complaint in this case stating that defendant acted in an intentional, willful and wanton manner in connection with the incident cannot be an "accident" and therefore an "occurrence." Under this policy, the willful and intentional shooting of Dominic Menniti alleged in the complaint is not an accident but rather is an intentional tort. As such, it is not covered by the policy and therefore, General Accident owed no duty to defend.

Appellants may argue that the underlying complaint contains counts of negligence, which are technically within General Accident's area of coverage, and triggers the duty to defend. Notwithstanding the fact that the complaint alleged negligent or reckless conduct, General Accident owed no duty of defense based on facts which clearly demonstrated that William Ciafra expected or intended to cause serious harm to Dominic Menniti at the time of the shooting. As discussed previously, William Ciafra's conviction for third-degree murder and his testimony at the deposition for the underlying civil suit, conclusively establishes that he acted intentionally during the incident. Moreover, after a thorough search of Pennsylvania case law, it is evident that the law prohibits coverage for the criminal acts of an insured, such as the act upon which defendant was convicted in this case. Even if each and every allegation of the complaint were proven, there is no doubt that William Ciafra acted intentionally rather than negligently. Therefore, defendant's actions are not covered by the in-

surance policy and General Accident is not obligated to defend or indemnify him in the underlying action.

Finally, it would have been contrary to the public policy of Pennsylvania, which prohibits insurance coverage for the consequences of willful criminal acts or intentional torts regardless of policy language. *State Farm Mutual Automobile Insurance Co. v. Martin,* 442 Pa. Super. 442, 660 A.2d 66 (1995); *Germantown Insurance Co. v. Martin, supra.* Pennsylvania public policy is premised on the theory that an insured "should not be able to avoid financial responsibility by shifting the penalty for his criminal act to an insurance carrier." *Kraus v. Allstate Insurance Co.,* 258 F. Supp. 407, 379 F.2d 443 (1967). A policy of liability insurance is a contract intended to protect and benefit the insured from liability resulting from unintentional conduct. *Martin, supra.* Insured persons will not be encouraged to act wrongfully, knowing that they are protected by insurance. William Ciafra should not be permitted to avoid the financial responsibility for his criminal act by having General Accident provide defendant with coverage. This would violate the public policy of Pennsylvania.

In conclusion, this court properly granted summary judgment in favor of General Accident Insurance Co., as there were no genuine issues of material fact in dispute. William Ciafra's guilty plea, his deposition testimony and the applicable case law of Pennsylvania, conclusively determine the issue of intent. The defendant's intentional act of shooting and causing the death of Dominic Menniti is excluded from coverage under General Accident's policy of insurance. To require General Accident to defend and indemnify defendant in the civil suit brought by appellants, would be contrary to Pennsylvania's public policy.