STATE FARM FIRE AND CASUALTY COMPANY, Appellant

v.

Randall P. CRALEY, Admr. of the Estate of Jayne Ann M. Craley, Randall P. Craley, Parent and Guardian of Keith P. Craley, A Minor, and Randall P. Craley, in His Own Right and Gloria M. Craley and Lawrence W. Craley, Husband and Wife, Appellees.

Superior Court of Pennsylvania.

Argued May 3, 2001.

Filed Sept. 26, 2001.

*accord State v. Evans,* 205 Conn. 528, 534 A.2d 1159, 1164 (1987) (plurality opinion) (holding that double jeopardy does not preclude the prosecution from appealing a dismissal based upon the failure of the information to specify the date of the offense); *State v. Pusey,* 600 A.2d 32, 36–37 (Del.1991); *Florida v. James,* 626 So.2d 259, 261–62 (Fla.App. 1993). Where the discrepancy has involved an element of the offense as proven at trial, it has been treated as factual. *See, e.g., United States v. Hunt,* 212 F.3d 539, 544 (10th Cir. 2000) (holding that double jeopardy barred a government appeal where the indictment alleged theft from the mail, and the proof established only a theft).

Teresa F. Sachs, Philadelphia, for appellant.

Daniel E.P. Bausher, Reading, for appellees.

Before: DEL SOLE, President Judge, CAVANAUGH, J., McEWEN, President Judge Emeritus, JOHNSON, JOYCE, STEVENS, MUSMANNO, LALLY–GREEN, and TODD, JJ.

JOYCE, J.

¶ 1 In this declaratory judgment action, Appellant, State Farm Fire and Casualty Company (State Farm)[1] appeals from the judgment entered by the trial court following the court's decision and verdict declaring that State Farm has a responsibility to pay the uninsured motorists benefits pursuant to an insurance policy purchased by Appellee, Randall P. Craley (Randall).[2] For the reasons set forth below, we will quash this appeal as untimely. The pertinent facts and procedural history of this case are as follows:

1. On July 12, 1993, the decedent, Jayneann Craley (Jayneann), was killed when the 1988 GMC Jimmy S15 Sport Wagon (Sport Wagon) which she was driving, and in which her mother-in-law, Gloria M. Craley (Mrs. Craley), and her minor son, Keith P. Craley (Keith), were passengers, collided with another vehicle being driven by Terry J. McFadden, who was uninsured.

2. Mrs. Craley and Keith also sustained multiple injuries as a result of the collision.

---

1. Another insurance company, Prudential Property and Casualty Insurance Company, was a party to a related case at the trial court level. However, Prudential is not involved in the instant appeal.

2. Consistent with the trial court, we will refer to State Farm Fire and Casualty Company as State Farm; Randall P. Craley as Randall; and Appellees collectively, as the Craleys.

3. At the time of this incident, Jayneann and her husband, Randall P. Craley (Randall), Keith, and Mrs. Craley, and Lawrence W. Craley, her father-in-law (Mr. Craley), all lived together in the same household at 106 Dogwood Drive, Narvon, Pennsylvania.

4. The Sport Wagon was registered in Jayneann's name and was insured under a policy issued by State Farm, No. S56–1104–C17–38A.

5. Jayneann was the regular operator of the Sport Wagon.

6. At the time of this incident, Randall owned a 1986 Mazda pickup truck which was not involved in the collision and was insured under a separate insurance policy issued by State Farm, No. S56–1103–C17–38.

7. At the time of this incident, Mr. and Mrs. Craley owned a 1990 Dodge Caravan which was likewise not involved in the collision and was insured under a policy issued by Prudential, No. 282A–670586.

8. Jayneann's Sport Wagon was not listed as an insured vehicle on either Randall's State Farm [p]olicy or on Mr. and Mrs. Craley's Prudential policy.
* * *

10. Mrs. Craley was neither a "named insured" nor a "listed operator" of the Sport Wagon which was insured under Jayneann's State Farm policy.

11. Each of the two State Farm policies provides for uninsured motorist benefits coverage in the maximum amount of $15,000.00 per person and $30,000.00 per accident.

12. Each of the two State Farm policies contains the following "waiver" signed by Jayneann and Randall entitled "Rejection of Stacked Uninsured Motorist Benefits", indicating that each of them had waived the right to "stack" uninsured motorist benefits coverage otherwise available under each State Farm policy onto the other's State Farm policy:

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premium will be reduced if I reject this coverage.

13. Both Jayneann and Randall received a reduction in the premiums which each of them paid to State Farm for each policy in exchange for their waivers of their right to stack uninsured motorist benefits coverage.

14. Each State Farm policy also contains the following "household exclusion" clause:

> THERE IS NO COVERAGE FOR *BODILY INJURY* TO AN *IN-SURED* UNDER COVERAGE U–3:
>
> 1. WHILE *OCCUPYING* A MOTOR VEHICLE OWNED BY *YOU*, YOUR *SPOUSE* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY; ...

15. The term "relative", as set forth in this "household exclusion" clause is defined in each State Farm policy as a "person related to you or your spouse by blood, marriage or adoption who lives with you".
* * *

23. Following the July 12, 1993 collision, the estate of Jayneann M. Craley

(Jayneann's estate), Keith and Mrs. Craley filed claims for uninsured motorist benefits under Jayneann's State Farm policy, No. S56–1104–C17–38A . . . .

24. Both Keith['s] and Mrs. Craley's claims were based on their status as "*resident relatives*" living in the same household."

25. While State Farm paid the policy limits of $30,000.00 in uninsured motorist benefits available under Jayneann's State Farm policy, No. S56–1104–C17–38A, it denied coverage under Randall's State Farm policy, No. S56–1103–C17–38, to Jayneann's estate, Keith and Mrs. Craley, on the basis of Randall's waiver of his right to stack uninsured motorist benefits coverage and the "household exclusion" clause set forth herein at Finding of Fact # 14.

* * *

27. The value of the wrongful death/survival claim by Jayneann's estate exceeds all possible . . . uninsured motorist benefits coverage limits under . . . the State Farm . . . polic[y].

28. The value of Mrs. Craley's claim for her personal injuries exceeds all possible . . . uninsured motorist benefits coverage limits under . . . the State Farm . . . polic[y].

29. The value of Keith's claim for his personal injuries is $40,000.00.

Trial Court Opinion, Findings of Fact, 12/22/1998, at 3–9.[3]

¶ 2 The parties stipulated to the above findings of fact, which the trial court ultimately adopted. The parties also separately submitted proposed conclusions of law and briefs in support thereof, outlining their respective positions. On December 22, 1998, the trial court issued its decision and verdict. Thereafter, both State Farm and the Craleys filed post-trial motions. On April 26, 2000, the court issued an order denying State Farm's motion and granting the motion filed by the Craleys. The court also amended the verdict to reflect the amount stipulated by the parties, *i.e.*, $15,000.00 per person or $30,000.00 per accident. At the request of the Craleys, the amended verdict was reduced to a judgment on May 25, 2000. This appeal by State Farm followed.

¶ 3 The questions presented for our review are as follows: (1) Whether the trial court committed an error of law in refusing, on public policy grounds, to enforce the "household exclusion" clause contained in the State Farm policy; (2) Whether the trial court committed an error of law in refusing to enforce Randall Craley's waiver of stacking uninsured motorist coverage; and (3) Whether the trial court committed an error of law in converting the non-stacking uninsured motorist coverage purchased by Randall Craley into stacking coverage. *See* Brief for Appellant (State Farm), at 5.[4]

¶ 4 Before addressing the questions presented for our review, as a threshold matter, we must determine whether this appeal is properly before us as it implicates jurisdictional matters.[5] We must de-

---

3. The omitted portions of the Findings of Fact relate to Prudential Property and Casualty Company which is not a party to this appeal.

4. We rephrased the questions presented for clarity purposes.

5. The Superior Court is without jurisdiction to excuse failure to file a timely notice of appeal, as 30–day period for appeal must be strictly construed; untimely appeal divests the Superior Court of jurisdiction. *Valley Forge Center Associates v. Rib–It/K.P., Inc.,* 693 A.2d 242 (Pa.Super.1997); *Brown v. Brown,* 433 Pa.Super. 577, 641 A.2d 610 (1994)(generally, an untimely appeal divests the Superior Court of jurisdiction).

termine if the instant appeal was timely filed pursuant to Pa.R.A.P. 903.[6]

¶ 5 This matter was initiated by State Farm as a declaratory judgment action seeking a declaration of its responsibility to provide uninsured motorist coverage under Randall's policy. The parties stipulated to the underlying facts and agreed that the matter could be decided by the trial court on the basis of the stipulated facts without testimony. The trial court issued a decision and a verdict on December 22, 1998, declaring that State Farm owed uninsured motorist benefits under Randall's policy and that the household exclusion clause contained in the policy was contrary to public policy. The parties then filed post-trial motions. Following the court's disposition of these motions, State Farm appealed to this Court. The question then becomes whether in light of the Declaratory Judgment Act, 42 Pa.C.S. § 7532; *Nationwide Mutual Insurance Co. v. Wickett*, 563 Pa. 595, 763 A.2d 813 (2000); *Prudential Property and Casualty Insurance Co. v. Gisler*, 764 A.2d 1111 (Pa.Super.2000); and *Miller v. Kramer*, 424 Pa.Super. 48, 621 A.2d 1033 (1993), the trial court's December 22, 1998 decision was a final and appealable order from which a direct appeal must be filed within thirty (30) days of its entry.

¶ 6 Under the Declaratory Judgment Act, 42 Pa.C.S. § 7532:

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S. § 7532.

■ ¶ 7 It is undisputed that the instant case was initiated as a declaratory judgment action. Against this background, we must determine whether the trial court's decision and verdict dated December 22, 1998 affirmatively or negatively declared the rights of the parties.

¶ 8 The court's decision and verdict concluded as a matter of law that the household vehicle exclusion contained in Randall's policy issued by State Farm was unenforceable as against public policy. The court also concluded that the waiver of stacking provision signed by Randall was not applicable to "inter-policy" stacking. The court then determined that each of the three claimants was entitled to $30,000.00 in uninsured motorist benefits pursuant to Randall's policy. We find that the above decision and verdict did in fact declare the rights of the parties affirmatively and negatively. The decision and verdict constitute an affirmative declaration of the Craleys' right to recover uninsured motorist benefits from State Farm pursuant to Randall's policy. It is also an affirmative declaration of State Farm's responsibility to pay uninsured motorist benefits to the Craleys based on Randall's policy. The decision negatively declared that some provisions of Randall's policy are unenforceable. Therefore, pursuant to the Declaratory Judgment Act, the court's December 22, 1998 decision and verdict have the force and effect of a final judgment or decree.

¶ 9 Under Pa.R.A.P. 341(b):

---

6. Pa.R.A.P. 903 provides as follows: Time for Appeal (a) General rule. Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken.

A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) any order that is expressly defined as a final order by statute . . . "

■ ¶ 10 Pursuant to subsection (b)(2), an order can be expressly defined as a final order by statute. Applying the above rule to the Declaratory Judgment Act, orders issued in a declaratory judgment action that affirmatively or negatively declare the rights of the parties constitute final orders because they are defined as final by statute. Along the same lines, the December 22, 1998 decision and verdict rendered by the trial court in this declaratory judgment action constitute a final and appealable order.

¶ 11 The fact that the trial court titled its resolution of the parties' dispute a "decision and a verdict" does not compel a different result. *See Nationwide Mutual Insurance Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000)(trial court orders in a declaratory judgment action granting preliminary objections in the nature of a demurrer which affirmatively or negatively declared the rights of the parties are final and appealable orders); *Prudential Property and Casualty Insurance Co. v. Gisler,* 764 A.2d 1111 (Pa.Super.2000)(a *decree nisi* issued by the trial court in a declaratory judgment action which effectively made a declaration in the negative has the force and effect of a final judgment or decree and will be treated as such despite its description as a *decree nisi* ).

■ ¶ 12 Pursuant to the Declaratory Judgment Act, 42 Pa.C.S. § 7532 and Pa. R.A.P. 341(b)(2), we conclude that the December 22, 1998 decision and verdict entered by the trial court in the case at bar constitute a final judgment or decree. As such, any appeals from that judgment must be filed within thirty (30) days of the entry of the judgment. *See* Pa.R.A.P. 903. The parties had thirty (30) days to appeal from the December 22, 1998 judgment ("decision" and "verdict"). The filing of post-trial motions did not extend or toll this thirty-day deadline. The instant appeal which was filed on May 26, 2000, was therefore untimely and we lack jurisdiction to review its merits.

¶ 13 Our conclusion is quite consistent with the decision of our Supreme Court in *Nationwide Mutual Insurance Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000). In *Wickett,* an employee who was injured in an automobile accident and the estate of another employee who was killed in that same accident initiated separate declaratory judgment actions seeking a declaration of their rights with respect to the defendants as well as a declaration that the Workers' Compensation Act did not prohibit them from recovering underinsured benefits from the employer's automobile insurer. Some of the defendants filed preliminary objections in the nature of a demurrer with respect to both actions. The trial court sustained these objections and dismissed the action with respect to these defendants. More than a year later, the court issued two separate orders, reversing its earlier order sustaining the preliminary objections. The court also amended these latest orders to permit immediate appeals. On appeal, the Superior Court affirmed the orders entered by the trial court.

¶ 14 The Supreme Court then granted allowance of appeal in order to consider whether the Superior Court erred in finding that the trial court's order sustaining preliminary objections in the nature of demurrers in actions brought pursuant to the Declaratory Judgment Act were not immediately appealable final orders pursuant to Pa.R.A.P. 341(b)(2). The Supreme Court opined as follows:

[The Declaratory Judgment Act, 42 Pa. C.S. § 7532,] simply states that an order in a declaratory judgment action that either affirmatively or negatively declares the rights and duties of the parties constitutes a final order.... [T]hat is exactly what the trial court's September 9, 1996 orders [sustaining the preliminary objections] did. Therefore, the trial court's orders constituted final orders pursuant to Pa.R.A.P. 341(b)(2), and the trial court was without jurisdiction to reconsider them more than thirty days after their entry.

*Id.* at 818.

¶ 15 Based on the above rationale, the Supreme Court reversed the orders of the Superior Court. Before arriving at its conclusion, the Supreme Court noted that in a determining the finality of orders in declaratory judgment actions, the inquiry must focus on whether the orders in question affirmatively or negatively declared the rights of the parties. According to the Court,

[i]f the orders at issue did in fact affirmatively or negatively declare the rights of the parties, then they constituted immediately appealable final orders pursuant to Pa.R.A.P. 341(b)(2). If no such declarations were made, then the orders were merely interlocutory, and the trial court retained jurisdiction to reconsider them.

*Id.* at 817.

¶ 16 Also consistent with *Wickett, supra,* is a recent decision by a panel of this Court in *Prudential Property and Casualty Insurance Co. v. Gisler,* 764 A.2d 1111 (Pa.Super.2000). In *Gisler,* the appellee, a police officer, was injured in an automobile accident while operating his patrol car. The officer then made a claim against his automobile insurer seeking benefits under his underinsured motorist policy. The au-

tomobile insurer denied the claim on the basis of the "regularly used non-owned car" exclusion contained in the policy. The insurer then filed a declaratory judgment action, seeking a determination of the parties' rights under the policy. The case was submitted to the trial court on stipulated facts. The trial court issued a *decree nisi* invalidating the exclusion on the grounds that it was contrary to public policy. The court also determined that the appellant (insurer) was responsible for providing benefits to the police officer pursuant to his underinsured motorist policy. No post-trial motions were filed.

¶ 17 On appeal, a panel of this Court determined that the trial court's *"decree nisi"* was indeed a final and appealable order. The panel stated as follows:

In the instant case, [the][a]ppellant sought a declaratory judgment from the trial court. After submission of the facts and legal arguments, the trial court, in issuing the *decree nisi,* effectively made a declaration in the negative in its decree. Because the statute [42 Pa.C.S. § 7532] gives such a declaration the force and effect of a final judgment or decree, we will treat it as such under Pa.R.A.P. 341(b) and consider the trial court's decree appealable, despite its description as a *decree nisi.*

*Id.* at 1113.

¶ 18 Based on *Wickett,* and *Gisler, supra,* it is clear that that regardless of the term used by the trial court to describe its order in a declaratory judgment action (such as a decision, verdict, *decree nisi,* etc.), if such an order affirmatively or negatively declared the rights of the parties, it is final and immediately appealable.

¶ 19 Both State Farm and the Craleys try to distinguish *Wickett* and *Gisler* from

the instant case on procedural grounds.[7] State Farm argues that unlike the instant case, the orders involved in *Wickett* sustained preliminary objections in the nature of a demurrer, while the order involved in *Gisler* was in the nature of a *decree nisi*. The parties argue that *Wickett* and *Gisler* solely involved declaratory relief while the instant case involves both a request for declaratory relief and the entry of a monetary award as part of the verdict.

¶ 20 The parties also attempt to distinguish *Wickett* and *Gisler* from the instant case by noting that in the instant case, from the outset, the trial court stated that the proceedings were being conducted pursuant to Pa.R.C.P. 1038.1 (dealing with cases submitted on stipulated facts). The parties also point to the Note to Rule 1038.1, which refers the reader to Rules 1038 (governing trial without jury) and Rule 227.1 *et seq.* (governing post-trial practice). The parties argue that pursuant to the above rules, the filing of post trial motions is permitted and required in order to obtain post-trial relief. In other words, since the above rules and notes thereto (dealing with non-jury trials and cases submitted on stipulated facts) permit and require the filing of post-trial motions, the parties argue that they were permitted and required to file post-trial motions in order to obtain relief from the trial court's December 22, 1998 decision and verdict.

¶ 21 We find the parties' attempt to distinguish *Wickett* and *Gisler* from the instant case to be unpersuasive. We find no authority that restricts the application of the Declaratory Judgment Act to cases involving preliminary objections and/or to cases involving an entry of a *decree nisi*. *Wickett* and *Gisler* do not restrict the statute in such a manner. Neither is there

any reason to believe that the General Assembly intended such a restriction. Conversely, there is no exemption from the application of the statute for cases involving a request for declaratory relief and the entry of a monetary award as part of the verdict. The General Assembly did not create such an exemption. Neither shall we.

■ ¶ 22 Similarly, we reject the suggestion and/or argument that the instant case should be exempt from the dictates of the Declaratory Judgment Act simply because it proceeded as a non-jury trial upon stipulated facts pursuant to Pa.R.C.P. 1038.1, 1038, 227.1 *et seq.* and Notes thereto. Nothing in the Declaratory Judgment Act or its legislative history indicates or suggests such an exemption. A careful reading of the statute and cases interpreting the statute leads to the inescapable conclusion that regardless of whether a case involves a jury or a non-jury trial, regardless of whether a case involves testimonial evidence or was submitted on stipulated facts, in a declaratory judgment action, if a trial court issues an order that affirmatively or negatively declares the rights of the parties, such an order is final and immediately appealable.

¶ 23 It is also noteworthy that in their attempts to distinguish the case at bar from *Gisler*, the parties ignore the fact that just like the instant case, *Gisler* was submitted to the trial court upon stipulated facts. The parties also ignore or fail to address *Gisler*'s conclusion that regardless of the trial court's description of its order in a declaratory judgment action, if it affirmatively or negatively declares the rights of the parties, it is a final and appealable order. As we agree with *Gis-*

---

7. We note that the parties have urged us to resolve this appeal on the merits rather than on procedural grounds. However, the parties cannot, by agreement, confer jurisdiction on this Court.

*ler,* we find it of little consequence that the trial court in the case at bar issued a "decision" and a "verdict" on December 22, 1998, as opposed to an "order" or "judgment."

¶ 24 In arriving at our conclusion in this case, we are cognizant of the fact that our courts have not specifically addressed the interplay between Pa.R.C.P. 1038.1, 1038, 227.1 *et seq.* and the Declaratory Judgment Act, especially with regard to the finality of orders and whether or not post-trial motions are permitted or required. From this standpoint, it may seem unfair to penalize the parties for adhering only to the rules governing cases submitted on stipulated facts and the rules governing non-jury trials. Also, the fact that the trial court erroneously accepted and ruled on the parties' post trial motions although it lacked the jurisdiction to do so lends credence to the unfairness argument. However, reviewing the merits of the instant appeal despite the untimeliness would be tantamount to creating or recognizing an exception to the Declaratory Judgment Act in cases submitted on stipulated facts—an exception not authorized by statute or case law.

¶ 25 It is also noteworthy that although *Wickett* and *Gisler* were decided while the instant case was pending on appeal, these cases did not create new law nor did they adopt novel interpretations of an existing statute: both cases applied the express language of the Declaratory Judgment Act, namely, that when a trial court order in a declaratory judgment action affirmatively or negatively declares the rights of the parties, it is a final and appealable order. As such, it is quite proper to consider these two recent cases in reviewing the case *sub judice.* Moreover, we gave the parties an opportunity to address the applicability of these cases to the present case in letter briefs, which they did.

¶ 26 We also recognize the apparent inconsistency between our conclusion in this case and the decision rendered by a panel of this Court in *Miller v. Kramer,* 424 Pa.Super. 48, 621 A.2d 1033 (1993), which stated that post-trial motions must be filed following the entry of a *decree nisi* in a non-jury trial on stipulated facts in a declaratory judgment action. Our disagreement with the *Miller* panel stems from the fact that it did not consider or apply the Declaratory Judgment Act. The panel did not consider whether the decree at issue in that case affirmatively or negatively declared the rights of the parties. We resolve this apparent conflict by relying on the Supreme Court decision in *Wickett,* which stated that in a declaratory judgment action, a trial court order or decision which affirmatively or negatively declares the rights of the parties is final and immediately appealable.

¶ 27 Based on our conclusion that the trial court's "decision" and "verdict" of December 22, 1998, constituted final and appealable order, we need not review the merits of the instant appeal, which was untimely filed on May 26, 2000. Accordingly, we will quash this appeal as untimely.

¶ 28 Appeal quashed.

¶ 29 DEL SOLE, President Judge, files Dissenting Opinion.

¶ 30 McEWEN, President Judge Emeritus, files Concurring and Dissenting Opinion in which MUSMANNO, J. joins.

¶ 31 MUSMANNO, J. files Concurring and Dissenting Opinion in which TODD, J. joins.

DEL SOLE, President Judge,
Dissenting.

¶ 1 I must respectfully dissent for two reasons. First, while I agree with the Majority that *General Accident Insurance*

*Co. of America v. Allen,* 547 Pa. 693, 692 A.2d 1089 (1997), and *Nationwide Mutual Insurance Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000), can be read as appearing to eliminate the normal and time-honored procedural rules involving post-trial practice, particularly in light of the statements made in the Dissenting Opinion of Mr. Justice Saylor in *Wickett* at 819, I do not conclude they do here.

¶ 2 I hasten to point out that neither *General Accident* nor *Wickett* involved a trial. Rather, *General Accident* dealt with determinations following cross-motions for summary judgment and *Wickett* with rulings on preliminary objections. Thus I would suggest that, in a case such as this, following trial the normal post-trial practice involved in civil cases has not been eliminated.

¶ 3 I do not believe that the Declaratory Judgment Act requires the elimination of traditional post-trial practice. In the Pennsylvania court system, matters involving the rules of procedure are, by constitution, delegated to the judiciary under Article 5. The procedure set forth which directs the steps necessary for entry of a final judgment has not been, nor could it be, abrogated by statute. Requiring the filing of post-trial motions following trial, does not, in my judgment, impinge on the Declaratory Judgment Act. I believe the procedures following trials in civil actions should be consistent to the greatest extent possible, thus eliminating traps that may prevent issues from being decided on their merits.

¶ 4 My second reason for dissenting is that, while the Majority directs the overruling of *Miller v. Kramer,* 424 Pa.Super. 48, 621 A.2d 1033 (1993), a position consistent with its holding, fairness requires we

reach the merits of the matter before us. The parties and trial court relied on *Miller* to dictate the procedure they followed. This reliance was particularly justified because, as explained above, both *General Accident* and *Wickett* did not involve appeals following a trial.

¶ 5 Accordingly, it would be appropriate in this instance to reach the merits of the matter before us.

McEWEN, President Judge Emeritus, Concurring and Dissenting.

¶ 1 As a result of a July 12, 1993, automobile accident which caused the death of Jayne Craley and seriously injured her son and her mother-in-law, State Farm [8] filed the instant declaratory judgment action on September 15, 1997, at No. 97–9019 "for the purpose of determining a question in actual controversy between the parties as set forth below" (paragraph 4 of declaratory judgment action complaint).

¶ 2 State Farm alleged at paragraph 18 of its complaint, that "Jayne A. Craley and Russell Craley purchased non-stacking uninsured and underinsured motorist coverages and executed valid waivers of 'stacking' coverages." At paragraph 19, State Farm alleged:

> Under the applicable State Farm Fire and Casualty Company policies of insurance, and in particular endorsement 6997AG applicable to both policies, defendants are precluded from "stacking" the uninsured motorist coverage under the second household policy providing uninsured motorist coverage.

¶ 3 The docket reflects that on October 29, 1997, due to the absence of any factual disputes, the parties submitted a stipulation "that [the] action may be decided by

---

**8.** Prudential Property and Casualty Insurance Co., filed a declaratory judgment action at No. 97–8741 which was treated as a companion case but not formally consolidated with the declaratory judgment action filed by State Farm.

declaratory judgment." The docket further reflects that on March 20, 1998, a certificate of readiness for trial was filed, "Jury and Non–Jury Trial waived", and that, thereafter, the parties submitted a joint stipulation of facts, as well as briefs and proposed conclusions of law. The trial court filed a decision on December 22, 1998, which provided that "Randall P. Craley in his capacity as administrator of the Estate of Jayne Ann Craley and as parent and natural guardian of Keith P. Craley and Gloria M. Craley are entitled to recover the following uninsured motorist benefits from State Farm Fire and Casualty Company—$90,000.00." This ruling, pursuant to well-settled law of our Supreme Court, was a final, appealable order. State Farm [9], rather than requesting reconsideration and entry of an order vacating the order of December 22, 1998, pending action by the court on its motion for reconsideration, filed post-trial motions on January 4, 1999. The appellees filed post-trial motions on January 12, 1999. Due to the passage of 30 days, the order of December 22, 1998, became final on January 21, 1999. *See: General Accident Co. of America v. Allen,* 547 Pa. 693, 706–707, 692 A.2d 1089, 1095 (1997). Fifteen months thereafter, by order dated April 26, 2000, the post-trial motions filed by State Farm were denied and the appellees' post-trial motions were granted, as a result of which the verdict was amended from $90,000 to $30,0000. State Farm, on May 25, 2000, filed a praecipe to enter judgment and a notice of appeal to this Court.

¶ 4 As the learned author of the majority opinion and my distinguished colleagues of the majority have opined, our Supreme Court in *Nationwide Mutual Insurance Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000), in clear and certain terms faulted attempts by this Court "to ignore the plain and unambiguous language of a statute" and held that:

> Section 7532 simply states that an order in a declaratory judgment action that either affirmatively or negatively declares the rights and duties of the parties constitutes a final order. As the above discussion explains, that is exactly what the trial court's September 9, 1996, orders did. Therefore, the trial court's orders constituted final orders pursuant to Pa.R.A.P. 341(b)(2), and the trial court was without jurisdiction to reconsider them more than thirty days after their entry. *See* 42 Pa.C.S. § 5505.

*Nationwide Mutual Insurance Company v. Wickett, supra* at 604, 763 A.2d at 818. Nor was the decision of the Supreme Court in *Wickett* an expression of a new interpretation of Section 7532 of the Judicial Code. *See e.g.: General Accident Insurance Company of America v. Allen, supra; Prudential Property and Casualty Insurance Co. v. Gisler,* 764 A.2d 1111, 1113 (Pa.Super.2000), *appeal denied,* —— Pa. ——, 782 A.2d 548, 2001 Pa. LEXIS, 1564 (Pa. July 24, 2001); *Redevelopment Authority of Cambria County v. International Insurance Co.,* 454 Pa.Super. 374, 685 A.2d 581, 586 (1996)(*en banc*), *appeal denied,* 548 Pa. 649, 695 A.2d 787 (1997); *Warner v. Continental/CNA Insurance Companies,* 455 Pa.Super. 295, 688 A.2d 177, 179 (1996), *appeal denied,* 548 Pa. 660, 698 A.2d 68 (1997).

¶ 5 The usual procedure in declaratory judgments, where, as here, the facts are not in dispute, is for the parties to file cross motions for summary judgment and for the appeal to be taken directly from

---

9. Prudential also filed post-trial motions on January 4, 1999, to the order entered at No. 97–8741 on December 22, 1998.

the order granting summary judgment. *See, e.g.: Acceptance Insurance Co. v. Seybert,* 757 A.2d 380 (Pa.Super.2000); *Standish v. American Manufacturers Mutual Insurance Co.,* 698 A.2d 599 (Pa.Super.1997); *Pempkowski v. State Farm Mutual Automobile Insurance Co.,* 451 Pa.Super. 61, 678 A.2d 398 (1996), *affirmed,* 548 Pa. 23, 693 A.2d 201 (1997); *Bowers by Brown v. Estate of Feathers,* 448 Pa.Super. 263, 671 A.2d 695 (1995), *appeal denied,* 550 Pa. 696, 705 A.2d 1303 (1997); *Equibank v. State Farm Mutual Automobile Insurance Co.,* 426 Pa.Super. 354, 626 A.2d 1243 (1993), *appeal denied,* 537 Pa. 605, 641 A.2d 306 (1994); *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.,* 441 Pa.Super. 446, 657 A.2d 1252 (1995), *reversed,* 549 Pa. 518, 701 A.2d 1330 (1997); *State Farm Mutual Automobile Insurance Co. v. Broughton,* 423 Pa.Super. 519, 621 A.2d 654 (1993) (*en banc*).

¶ 6 Nevertheless, a motion for summary judgment is not the sole means by which to resolve a declaratory judgment action. The parties in *State Farm Mutual Automobile Insurance Co. v. Martin,* 442 Pa.Super. 442, 660 A.2d 66 (1995), just as have the parties in the instant case, stipulated to the facts which were then submitted to the court for declaratory judgment. The appeal was properly taken by State Farm *directly* from "the order entering declaratory judgment in favor of appellees . . . ." *Id.* at 68.

¶ 7 Had that procedure [10] been followed in the instant case, this Court would have had jurisdiction to vacate the December 22, 1998, order, since the jurisdiction of this Court extends only to appeals filed within thirty days of the entry of a final order.

¶ 8 A study of declaratory judgment appeals over the past decade reveals a number of decisions, but no certain authority. *See: Widener University, Inc. v. Estate of Boettner,* 726 A.2d 1059, 1061 (Pa.Super.1999), *appeal denied,* 561 Pa. 678, 749 A.2d 472 (2000) (in declaratory judgment action appeal followed the denial of defendant's exceptions to the decree). *Bangor Area Education Association v. Angle,* 720 A.2d 198 (Pa.Cmwlth.1998), *affirmed per curiam,* 561 Pa. 305, 750 A.2d 282 (2000) (in declaratory judgment action, appeal filed following denial of exceptions to order captioned "*decree nisi");  State Farm Fire and Casualty Co. v. Levine,* 389 Pa.Super. 1, 566 A.2d 318 (1989) (appeal taken following denial of post-trial motion filed after verdict in jury trial held in declaratory judgment action brought to determine if insurer had duty to defend); *Acceptance Insurance Co. v. Seybert,* 757 A.2d 380, 381 (Pa.Super.2000) (appeal filed after denial of "Exceptions to Adjudication", filed to order granting summary judgment in favor of insurer in declaratory judgment action); *Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Co.,* 746 A.2d 1118, 1120 (Pa.Super.1999), *appeal granted,* 565 Pa. 647, 771 A.2d 1285 (2001) (appeal filed following denial of post-trial motion to adjudication and *decree nisi* entered on stipulated facts in declaratory judgment action); *United Services Automobile Association v. Shears,* 692 A.2d 161, 162 (Pa.Super.1997) (order entered in declaratory judgment action "that USSA had a duty to provide coverage under its policy co-extension with Pennsylvania Law, and that the breach of USAA's duty

---

**10.** Had State Farm petitioned for reconsideration and obtained an order, prior to January 21, 1999, vacating the order of December 22, 1998, the trial court would have also had jurisdiction to enter the further order which declared that the appellees were entitled to $30,000 in uninsured motorist benefits.

to provide this coverage was a tort" was deemed "interlocutory" and "not appealable").

¶ 9 The declaratory judgment action underlying *Baughman v. State Farm Mutual Automobile Insurance Co.,* 441 Pa.Super. 83, 656 A.2d 931 (1995), was commenced by State Farm and conducted as a bench trial, following the denial of State Farm's motion for summary judgment. At the conclusion of the bench trial, the court entered "[an] order and supporting opinion, declaring that the insured's UIM policy limits under the applicable State Farm policy are $100,000. Notice of the order was mailed on May 9, 1994. On May 16th, State Farm filed a motion for post-trial relief. On June 2nd, before the resolution of State Farm's post-trial motions, State Farm filed a notice of appeal." The filing of the notice of appeal within 30 days of the declaratory judgment was, of course, the correct procedure as explained by our Supreme Court in *Allen, supra,* and *Wickett, supra*—and was, as well, the prudent course, if counsel was uncertain as to the appealability of the order of May 9, 1994. *See:* Comments to Pa.R.A.P. 1701. This Court, however, quashed the appeal,

> Specifically, based on the testimony, Judge Reed found that the Insured did not authorize her husband to reduce her UIM coverage when the husband reduced his UIM coverage. Judge Reed also found that the Insured did not ratify or assent to a reduction in her UIM coverage at any later date. Based on these findings, Judge Reed concluded that, pursuant to section 1734 of the Motor Vehicle Financial Responsibility Law, the Insured had $100,000 in UIM coverage under the State Farm policy. Because of the foregoing, we find that Judge Reed rendered a verdict or decision, not a final judgment. Accordingly, State Farm was correct in filing post-trial motions therefrom. *Miller, supra,* 424 Pa.Super. 48, 621 A.2d 1033.

\* \* \* \*

> Since we find that Judge Reed rendered a decision after trial, and because State Farm properly filed its post-trial motions within ten days of receiving notice of the decision, we quash the instant appeal so that the trial court may have the first opportunity to correct any errors that it may have made in its adjudication.

*Baughman, supra,* 656 A.2d at 933 (citations omitted).

¶ 10 Nor is *Baughman* a fleeting deviation, for, as earlier recounted, our Court appears to have overlooked the finality of an order of declaratory judgment in cases where the order of declaratory disposition was entered in response to a motion for summary judgment, as well as where the order of declaratory disposition was entered in response to the submission of stipulated facts. That the effort by the bar to secure declarations of the law could produce such uncertainty is uniquely anomalous, as well as discomforting.

¶ 11 As I see it, therefore, the operative factors are:

> The General Assembly and our Supreme Court have mandated that orders declaring rights and duties in declaratory judgment actions are immediately appealable.

> The majority quite correctly complies with that mandate.

> That compliance by this Court with the mandate of the Supreme Court inflicts adverse consequences upon appellees and their counsel.

> Appellee and their counsel suffer such adverse consequences because they were beguiled by certain of the decisions of this Court.

¶ 12 Such unfairness cries for correction and such adjustment as may be available under the law. I am of the mind that the Pennsylvania Supreme Court has afforded just such an avenue for adjustment in its decision in *Commonwealth v. Fry,* —— Pa. ——, 778 A.2d 623 (2001), where the court reversed and remanded to this Court an appeal which had been quashed by this Court as untimely. The Court there relied upon *Union Electric Corp. v. Board of Property Assessment,* 560 Pa. 481, 746 A.2d 581 (2000), for the proposition that a *nunc pro tunc* appeal should be granted when the failure to comply with the timeliness requirement was caused by a misstatement by an administrative body of the deadline for filing an appeal. *Commonwealth v. Fry, supra.* Surely, that rationale is no less applicable to the confusion caused by judicial uncertainty.

¶ 13 Thus, although I firmly join in the decision of my colleagues that the appeal of State Farm was untimely, I believe that the authority of this Court to allow an appeal *nunc pro tunc* is now an inherent prerogative of this Court, and that we would wisely and justly here exercise that authority.

¶ 14 MUSMANNO, J. joins the Concurring and Dissenting Opinion by McEWEN, President Judge Emeritus, and also files a Concurring and Dissenting Opinion.

MUSMANNO, J., Concurring and Dissenting.

¶ 1 I agree with the majority's analysis of the Declaratory Judgment Act, 42 Pa. C.S.A. § 7532, and their conclusion that an order, which declares the rights of the parties, constitutes a final, appealable order. However, I believe that our interpretation of the Declaratory Judgment Act should be applied prospectively, and that this Court should address the merits of the claims raised by State Farm on appeal.

¶ 2 State Farm filed this case as a declaratory judgment action. However, the parties submitted this case, based upon stipulated facts, for the trial court's determination. Thus, the parties faced a procedural conundrum. Under the Declaratory Judgment Act, any order that declares the rights and duties of the parties has the force and effect of a final judgment or decree. 42 Pa.C.S.A. § 7532. Such an order is immediately appealable. Pa. R.A.P. 341(b). However, in a case submitted on stipulated facts, the parties must file post-trial motions to preserve their claims for appellate review. *See* Pa.R.C.P. 1038.1 (stating that the practice and procedure of a case submitted on stipulated facts shall be in accordance with the rules governing a trial without a jury); Pa. R.C.P. 227.1 (requiring the filing of post-trial motions to preserve claims for appellate review).

¶ 3 Further complicating this matter, in *Miller v. Kramer,* 424 Pa.Super. 48, 621 A.2d 1033 (1993), a panel of this Court held that, in a declaratory judgment action, post-trial motions must be filed following the entry of a *decree nisi* in a non-jury trial on stipulated facts. *See contra Nationwide Mut. Ins. Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000) (under different procedural circumstances, holding that an order that affirmatively or negatively declared the rights of the parties constitutes a final order); *Prudential Property and Casualty Ins. Co. v. Gisler,* 764 A.2d 1111 (Pa.Super.2000) (likewise, under different procedural circumstances, holding that the trial court's order in a declaratory judgment action, although captioned as a *decree nisi,* constituted a final appealable order).

¶ 4 Because of the conflicting statute, procedural rules and case law, I believe that the majority's holding should be applied *prospectively.* I do not believe that

this Court should penalize a litigant for applying the then valid case law of our Court, and conflicting rules of procedure. For that reason, I agree, in part, with the Dissenting Opinion of my esteemed colleague, President Judge Del Sole, and would address the merits of the claims raised by State Farm on appeal.

¶ 5 TODD, J. joins the Concurring and Dissenting Opinion by MUSMANNO, J.